IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAMEIUM DWIGHT BURROUGHS,       *

     Plaintiff,                   *

v.                            *       Civil Action No. GLR-23-1223

DORSEY RUN CORRECTIONAL      *
(MEDICAL), et al.,
                            *

     Defendants.

                          ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Raylene Robinson, RN's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 19), and Defendants Dorsey Run Correctional (Medical), Dorsey Run Chief of Security Necole Haggie, Warden David Greene, and COII Adeeso's (collectively, "Correctional Defendants")[1] Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant Defendants' Motions, construed as motions for summary judgment.

---

[1] The Clerk is directed to update the docket to reflect the correct spelling of "Odeso" to "Adeeso"; add Necole Haggie's name as the Dorsey Run Chief of Security; change "Rayleen Sage, RN" to "Rayleen Robinson, RN"; and change "Warden Green" to "Warden Greene." (<u>See</u> Def. Raylene Robinson's Mem. Supp. Mot. Dismiss Alternative Mot. Summ. J. ["Robinson's Mot."] at 1, ECF No. 19-1; Correctional Defs.' Mot. Dismiss Alternative Mot. Summ. J. at 1 n.2, ECF No. 23). Correctional Defendants appear to misspell Warden Greene a few times but mostly use "Greene" in their Memorandum of Law in Support of their Motion (ECF No. 23-1).

# I.    BACKGROUND

## A.    <u>Burroughs' Allegations</u>

Self-represented Plaintiff Dameium Dwight Burroughs, a state inmate currently at Baltimore City Correctional Center ("BCCC"), alleges that correctional personnel failed to provide him with proper equipment while working, which led to an injury for which he received inadequate medical treatment. (Am. Compl. at 4, ECF No. 6).[2] Specifically, he says that on February 23, 2023, while incarcerated at Dorsey Run Correctional Facility ("DRCF"), he was struck with a needle while picking up trash. (<u>Id.</u>). He reported the incident to Defendant COII Adeeso, who instructed Burroughs to continue working and to visit Medical upon return to the prison. (<u>Id.</u>). Burroughs did as he was instructed, and when he arrived at Medical, RN Robinson directed him to wash his hands for five minutes and indicated she would put Burroughs on the list to have his blood drawn. (<u>Id.</u>).[3] He states that he was "never given the pre-exposure prophylaxis test" despite potentially being "expose[d] to aids." (<u>Id.</u>). Burroughs notified Warden Greene and Chief of Security Haggie about this incident. (<u>Id.</u>). He also says that, while working on road crew, inmates are not given gloves to protect their hands. (<u>Id.</u> at 5). As a result of this incident, he sustained an

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[3] Burroughs does not name Robinson in the Amended Complaint, but instead acknowledges that although he does not know the nurse's name, he describes her as "an older white lady." (Am. Compl. at 1). Burroughs notes that he requested his medical records so that he might identify her. (<u>Id.</u>). In his Supplement, Burroughs identifies the nurse as Raylene Sage. (Suppl. Am. Compl. at 1, ECF No. 10). Sage was later identified by counsel as Raylene Robinson. (<u>See</u> Robinson's Mot. at 1, ECF No. 19-1).

injury to his right hand, lost his job, was "sent out of the prison," and "might have AIDS or HIV." (Id. at 4–5).[4]

**B.    Robinson's Response**

Robinson avers that, as an RN, she "cannot order blood draws or any labs. Only a medical provider can order labs." (Decl. Raylene Robinson, RN ["Robinson Decl."] ¶ 5, ECF No. 19-2). Rather, as an RN, the only thing she can do is "refer the patient to the provider, and then the provider orders the labs." (Id.). She states that "[i]n this case, I did have the patient wash his hands and I did refer him to the provider." (Id.).

The medical records reflect that when Burroughs went to Medical on February 23, 2023, he reported that his right index finger was stuck by a needle while working on road crew, and his finger bled when he removed the needle. (Robinson Medical Rs. Part 1 at 34, ECF No. 19-3). He said that sanitizer was available on the scene, and he washed his hands for a few minutes. (Id.). Robinson noted a small mark on his fingertip, but noted no swelling or drainage. (Id.). Burroughs washed his hands for five minutes. (Id.). Given the potential for "alteration in health maintenance [] related to potential for infection," Robinson "immediately referred [Burroughs] to [a] provider." (Id.). She noted that the provider

---

[4] In his Opposition to Robinson's Motion, Burroughs appears to raise claims about the adequacy of his medical care more generally, including treatment of his foot. (See Opp'n Robinson Mot. at 2–3, ECF No. 21). Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. See Zachair Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), aff'd, 141 F.3d 1162 (4th Cir. 1998); Mylan Laboratories, Inc. v. Akzo, N. V., 770 F.Supp. 1053, 1068 (D.Md. 1991), aff'd, 2 F.3d 56 (4th Cir. 1993). The Court therefore will not consider these additional, unrelated allegations. Burroughs is free to pursue these claims in a separate civil suit.

recommended a visit in thirty days, and Burroughs was scheduled for March 23, 2023. (Id.). On that date, NP Janet Mijere examined Burroughs, and she ordered labs to test his blood. (Id. at 32–33).

Robinson explains that "Hepatitis and HIV are not immediately detectable in blood tests after exposure, and this is why DNP Mijere waited 30 days to see the patient for labs." (Robinson Decl. ¶ 8). The length of time it takes to detect HIV can vary from roughly ten to ninety days depending on the type of test used. (Id.). Similarly, for Hepatitis, "it can take a week or two before there are enough virus particles to be detected in the blood." (Id.). Burroughs completed the labs ordered by DNP Mijere on March 24, 2023, and he "tested negative for Hepatitis A, B, and C, and HIV." (Id. ¶ 9; see also Robinson Medical Rs. Part 2 at 11, ECF No. 19-4). Robinson avers that her review of the medical records did not reveal "any other complaints regarding his finger after being stuck by the needle." (Robinson Decl. ¶ 10).[5]

## C.    The Correctional Defendants' Response

Warden David Greene avers that "[m]edical services are provided to incarcerated individuals at DRCF by a private medical contractor," and "DRCF correctional staff [have] no personal involvement in the provision of medical care to any incarcerated individual at DRCF." (Warden David Greene Decl. ["Greene Decl."] ¶ 2, ECF No. 23-2). Additionally, DRCF correctional staff have no authority to make decisions concerning medical care, perform any medical procedure or render any treatment, or to recommend any particular

---

[5] The Court's review of the medical records provided by Robinson is consistent with this statement. (See generally Robinson Medical Rs. Parts 1, 2).

course of treatment. (Id.). Further, "DRCF correctional staff [have] no responsibility under the medical company's contract to monitor the provision of medical services to incarcerated individuals at DRCF." (Id.). He further attests that because DRCF correctional staff are not medical professionals, they defer to and rely on the expertise of medical professionals when addressing inmate complaints related to medical care. (Id. ¶ 3). Finally, he asserts that "DRCF correctional staff [do] not interfere with, hinder, or delay medical treatment or care to any incarcerated individual." (Id. ¶ 6).

Kristen Silk, DRCF's Litigation Coordinator, declared that on March 7, 2023, Burroughs submitted an ARP regarding the February 23, 2023 incident, ARP-DRCF-0097-23. (Decl. Kristen Silk ["Silk Decl."] ¶¶ 1, 3, ECF No. 23-3). In the ARP, Burroughs alleges that he was stuck with a needle while on road crew, and although he was seen by Medical, the "proper procedure was not followed" and he was "not given the pre-exposure prophylaxis." (Id. at 3).[6] He states that he informed COII Adeeso of the incident and was instructed to keep working. (Id.).  He states that the gloves provided were inadequate, and he informed both the Warden and the Secretary of Corrections regarding the incident. (Id.). The ARP is signed and dated as received on March 7, 2023, and on March 8, 2023, the ARP facilitator directed Burroughs to "[p]lease [r]esubmit, with one complaint at a time." (Id.).

Burroughs resubmitted his ARP on March 10, 2023, this time complaining of denial of adequate medical treatment following the February 23, 2023 incident. (Id. at 2, 4). On

---

[6] Burroughs' ARP is attached to Silk's Declaration. The page numbers referenced refer to the pagination assigned by the Court's CM/ECF system.

March 13, 2023, the ARP was marked as "dismissed for procedural reasons" for failing to "resubmit the request in accordance with the coordinators instructions." (Id. at 4). Silk attests that "there is no record of [Incarcerated Individual] Burroughs appealing the dismissal to the Commissioner of Correction." (Id. ¶ 6).

**D.   <u>Procedural History</u>**

Burroughs filed the original Complaint on May 8, 2023. (ECF No. 1). He filed the Amended Complaint on July 14, 2023, (ECF No. 6), as ordered by this Court, and he also filed a Supplement to the Amended Complaint on August 16, 2023, (ECF No. 10). The Court construes Burroughs' Complaint as alleging an Eighth Amendment claim under 42 U.S.C. § 1983 for failure to provide proper medical care. (See Am. Compl. at 4). He seeks monetary damages and restoration of lost good conduct credits. (Id. at 5).

In response to the Amended Complaint, Robinson filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on October 25, 2023. (ECF No. 19). The Correctional Defendants also filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on December 27, 2023. (ECF No. 23). Burroughs filed an Opposition to Robinson's Motion on November 8, 2023, (ECF No. 21), and an Opposition to Correctional Defendants' Motion on January 22, 2024, (ECF No. 25). Correctional Defendants filed a Reply on January 31, 2024, (ECF No. 26), and Robinson did not file a reply.

## II.   DISCUSSION

**A.   Standard of Review & Conversion**

**1.   Conversion**

Defendants' Motions are styled as Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on

notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247. (quoting 10B

Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trustees</u>, 55 F.3d 943, 954 (4th Cir. 1995)).

Here, the notice requirement has been satisfied by the title of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); <u>see</u> <u>Harrods</u>, 302 F.3d at 244–45. Although Burroughs has replied to the Motions, he has not asserted that discovery is necessary, and thus the Court will convert the Motions into motions for summary judgment.

### 2.      Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the

evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's

favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing

on an essential element of his case where he has the burden of proof, "there can be 'no

genuine [dispute] as to any material fact,' since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.**   **Analysis**

  **1.**   **Correctional Defendants' Motion**

The Correctional Defendants have moved for dismissal, or alternatively, for

summary judgment in their favor. (Correctional Defs.' Mem. Supp. Mot. Dismiss

Alternative Mot. Summ. J. ["Correctional Defs.' Mot."] at 1, ECF No. 23-1). They argue

that: (1) DRCF is not a person subject to suit under § 1983; (2) the Eleventh Amendment

bars suit against the Correctional Defendants in their official capacities; (3) Burroughs has

failed to exhaust his administrative remedies and thus his claims are barred by the Prison

Litigation Reform Act ("PLRA"); (4) Burroughs has not alleged sufficient personal

participation by the Correctional Defendants to establish liability; (5) Burroughs has failed

to state a claim for supervisory liability against Greene and Haggie; (6) Burroughs has

failed to state a claim for denial of constitutionally inadequate medical treatment; and (7)

the Correctional Defendants are entitled to qualified immunity. (Id. at 7–16). After

reviewing the record, the Court finds that Burroughs has failed to exhaust his

administrative remedies, and therefore that Correctional Defendants are entitled to

summary judgment. Because Burroughs' claims are barred by the PLRA and failure to exhaust, the Court need not consider Correctional Defendants' other arguments.

If a prisoner's claims have not been properly presented through the administrative remedy procedure, they must be dismissed under the PLRA, 42 U.S.C. § 1997e.

The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Id. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017). The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an

opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." Custis, 851 F.3d at 362.

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 728 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established ARPs for use by Maryland State prisoners for "inmate complaint resolution." See generally Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), § 10-201 et seq.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See C.S. § 10-206(b). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and is defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B). The second step in the ARP

14

process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5).

If the Commissioner of Corrections denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). [7] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Corrections, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO "may dismiss it without a hearing." C.S. § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. See C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. See C.S. § 10-208; COMAR 12.07.01.07(D); Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly

---

[7] If the Commissioner fails to respond, the grievant shall file their appeal within thirty days of the date the response was due. COMAR 12.07.01.05(B)(2).

or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. See COMAR 12.07.01.10(B); C.S. §§ 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his remedies. See C.S. § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Here, the record reflects, and Burroughs does not dispute, that he did not complete the entirety of the grievance procedure by filing an ARP about the issues raised in his Amended Complaint. The record reflects that Burroughs filed his initial ARP improperly and was directed to resubmit it, which he did. (Silk Decl. at 3). The resubmitted ARP was then dismissed for procedural reasons. (Id. at 4). There is no evidence in the record, and Burroughs does not argue, that he completed any subsequent steps in the grievance process to challenge this dismissal. (See id.). Because Burroughs failed to complete the process of exhaustion, his claims cannot proceed under the PLRA. Summary judgment must be granted in favor of the Correctional Defendants.

### 2.   Robinson's Motion

Generously construing Burroughs' claims, he alleges that Robinson provided constitutionally deficient medical care following his encounter with an unknown needle. (Am. Compl. at 4–5). In her Motion, Robinson argues that Burroughs has failed to state a

claim against her, or alternatively, that she is entitled to summary judgment because she did not render constitutionally inadequate medical care. (Robinson's Mot. at 7–8). In support thereof, Robinson offers her Declaration regarding the allegations against her and portions of Burroughs' medical record. (See generally Robinson Decl.; Medical Rs. Parts 1, 2). At bottom, the Court finds that Robinson is entitled to summary judgment because the record shows that she responded reasonably to Burroughs' medical condition.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein, 825 F.3d 206, 217–18 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson, 877 F.3d at 543. A prisoner plaintiff must allege and provide some evidence he was suffering from a serious medical need and that defendants were aware of his need for medical attention but failed to either provide it or ensure it was available. See Farmer v. Brennan, 511 U.S. 825, 834–37 (1994); see also Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017); King, 825 F.3d at 218; Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The medical condition at issue must be

objectively serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A serious medical condition is an illness or condition that is either life-threatening or causes an unnecessary infliction of pain when it is not treated properly. See e.g., Barnes v. Bilak, No. JKB-17-1057, 2018 WL 2289232, at *6 (D.Md. May 17, 2018) (finding that high blood pressure is a serious medical condition); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (finding that pituitary tumor is a serious medical condition); Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001) (finding that substantial risk of suicide is a serious medical condition).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. See Farmer, 511 U.S. at 839–40; see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflict[or] . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through other evidence that tends to establish the defendants knew about the problem. This includes evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Scinto v.

Stansberry, 841 F.3d 219, 226 (4th Cir. 2016) (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Lightsey, 775 F.3d at 179 (physician's act of prescribing treatment raises a fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Additionally, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) (quoting Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977)).

Robinson concedes that the potential "risk of contracting Hepatitis, HIV, or some other infectious disease from the needle that stuck Plaintiff arguably satisfies the objective prong." (Robinson's Mot. at 8). She disputes, however, that she acted with the requisite subjective recklessness in treating Burroughs to establish deliberate indifference.  (Id.). The Court agrees.

The record demonstrates that when Burroughs reported to Medical, Robinson assessed his injury, noting that it was not swollen or producing discharge. (Robinson Medical Rs. Part 1 at 34). Given the potential for "alteration in health maintenance [] related to potential for infection," Robinson "immediately referred [Burroughs] to [a]

provider." (Id.). She noted that the provider recommended a visit in thirty days, and Burroughs was scheduled to be seen on March 23, 2023. (Id.). Robinson avers that, as an RN, she "cannot order blood draws or any labs. Only a medical provider can order labs." (Robinson Decl. ¶ 5). Rather, as an RN, the only thing she can do is "refer the patient to the provider, and then the provider orders the labs." (Id.). The record supports that, in addition to cleaning the wound, Robinson took the actions that were within her scope as a nurse. The Court finds that Robinson acted reasonably in this circumstance. Burroughs' repeated insistence that Robinson should have administered a "pre-exposure prophylaxis," at best, amounts to a disagreement regarding his medical treatment, which is insufficient to state a claim under § 1983. See Wright, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Robinson is therefore entitled to summary judgment.

### III.   CONCLUSION

For the foregoing reasons, the Court grants both Robinson's Motion, (ECF No. 19), and Correctional Defendants' Motion, (ECF No. 23), construed as motions for summary judgment. A separate Order follows.

Entered this 15th day of August, 2024.

_____/s/_____

George L. Russell, III
United States District Judge